A. R. Woodham and Rosalie Woodham, Husband and Wife v. Commissioner.
Woodham v. Commissioner
Docket No. 53393.
United States Tax Court
T.C. Memo 1955-319; 1955 Tax Ct. Memo LEXIS 22; 14 T.C.M. (CCH) 1246; T.C.M. (RIA) 55319; November 30, 1955
*22 From 1946 to 1950, inclusive, petitioner was engaged in a number of businesses from which he received taxable income. On his returns for such years, he reported income from only three to six different sources. The respondent determined that petitioner received income from nine to eleven different sources and in a total amount far in excess of that reported. The parties stipulated the amounts of income which petitioner received from most sources; they also stipulated his total business expenses. Held, the amount of income from ten real estate sales, the income from real estate brokerage commissions, and net interest income from petitioner's loan business determined. Held, further, a part of the deficiency each year was due to fraud with intent to evade tax, and the statute of limitation is not a bar to the assessment and collection of the deficiencies herein determined. Hugh R. Dowling, Esq., Barnett Bank Building, Jacksonville, Fla., Abner Riley Powell, Jr., Esq., and Charles L. Rowe, Esq., for the petitioners. Homer F. Benson, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and penalties *23 under section 293(b) of the 1939 Code determined by the respondent as follows: Sec. 293(b)
Year Ended
Deficiency
Penalty
December 31, 1946
$12,681.06
$ 6,340.53
December 31, 1947
9,706.09
4,853.05
December 31, 1948
3,169.64
1,584.82
December 31, 1949
7,946.74
3,973.37
December 31, 1950
6,617.56
3,308.78
Totals
$40,121.09
$20,060.55
Concessions have been made with respect to many issues and will be taken into account under a Rule 50 computation. The remaining issues to be decided are: (1) the amount of income from the sale of 10 parcels of real estate owned by petitioner, A. R. Woodham; the amount of brokerage commissions on other real estate sales; and, the amount of net interest income which petitioners received during the years in issue; (2) whether a part of the deficiency for each year was due to fraud with intent to evade tax; and, if not, (3) whether the petitioners understated their gross income for the years 1948 and 1949 by more than 25 per cent. The petitioners pleaded the statute of limitation as to the years 1946 and 1947, absent a finding of fraud. Some of the facts were stipulated. Findings of Fact The stipulated facts *24 are so found and are incorporated herein by this reference. A. R. Woodham (hereinafter referred to as petitioner) and his wife, Rosalie Woodham, were residents of Opp, Alabama, during the years in issue. They filed joint income tax returns for such years with the collector of internal revenue for the district of Alabama. At the time of the hearing, petitioner was 59 years of age. He was born and reared in Opp, Alabama, and had lived in that town all of his life. He had a high school education and had finished one year of college. Prior to the years in issue, he had taught school and for 12 years was postmaster of Opp. For a number of years, he was employed by the Federal Land Bank of New Orleans. Since 1934, his principal business activity has been lending money in the form of both short and long-term loans. During the years in issue, he conducted his business activities under the name of A. R. Woodham, Agency. During such years, in addition to the loan business, he was engaged in the sale and rental of real estate, the insurance business, the hardware business, and a building supply business. On his income tax returns for the years in issue, petitioner reported on the first *25 page of such returns the following amounts of income from the indicated sources: Source
1946
1947
1948
1949
1950
Warner Bros. & Others
$ 47.20
$0
$0
$0
$0
Insurance Commissions Net
1,304.17
1,407.01
1,480.82
1,550.78
1,670.40
Real Estate Commissions Net
702.00
702.00
690.00
700.00
1,110.00
City Board of Education and
747.00
179.00
385.00
146.00
0
Theatre
Other Fees and Commissions
0
0
0
560.00
0
Dividends
32.00
0
0
0
0
Interest
1,155.00
811.77
1,777.00
1,777.00
1,777.00
Total Adjusted Gross Income
$3,987.37
$3,099.78
$4,332.82
$4,733.78
$4,557.40
The remaining pages of his returns were blank. He did not attach any schedules to his return showing his computation of the net amounts appearing on page 1 of such returns. Respondent's agents determined that petitioner had received income during the years in issue from many sources not shown on his returns and in a total amount far in excess of that shown on his returns. At the hearing, petitioner conceded that he had received income from sources and in the amounts as follows: 1946
1947
1948
1949
1950
Rental
$ 1,818.00
$ 1,630.00
$ 1,336.00
$ 1,778.00
$ 2,162.00
Net Interest
3,816.62
10,762.64
13,940.25
5,488.73
16,277.01
Contract Sales
376.81
1,228.69
1,582.41
1,439.45
1,175.15
Appraisals
205.00
160.00
50.00
155.00
220.00
Under-written by self
39.23
75.52
289.17
1,713.69
Real Estate Sales
8,982.03
909.77
1,507.32
1,119.50
3,415.35
Rental Commissions
139.99
164.00
146.35
157.34
136.84
Insurance Commissions
2,205.53
3,286.20
2,460.00
3,107.56
2,552.00
Opp Hardware
622.67
Partnership
Building Supply Co.
3,516.47
857.33
3,945.89
4,432.24
Sale of Timber
500.00
Salaries
794.20
179.00
385.00
146.00
Dividends
32.00
Total
$18,370.18
$21,876.00
$22,340.18
$18,126.64
$32,706.95
*26 The parties stipulated that petitioner incurred total expenses in his various business activities as follows: 1946
$ 7,272.88
1947
8,780.55
1948
11,859.25
1949
14,065.13
1950
14,436.30
The percentages by which petitioner conceded he understated the net amount of his adjusted gross income are as follows: 1946
178%
1947
322%
1948
142%
1949
1950
301%
In addition to the amounts of income which petitioner conceded he received, as indicated above, the respondent determined that he received additional amounts of income from the sale of ten parcels of real estate, from commissions as a real estate sales agent, and from his loan business. The parties stipulated how the gains, if any, from each of the ten real estate sales were to be taxed, i.e., whether as ordinary income or as a long-term capital gain. Real Estate Sales 1946 1. Petitioner sold two lots on which five houses were located at the time of the sale. The property cost him $500. He sold the property for $900 and agreed to remove the five houses at the purchaser's expense. Petitioner contracted to have such houses removed. The cost thereof was $4,000 which the purchaser *27 paid to him and which he, in turn, paid to the contractor who removed the houses. The respondent determined that the cost of removing the houses was a capital expense which should have been added to the bases of the houses, and not taken as an expense connected with selling the lots. Respondent's determination was erroneous and petitioner's gain on such transaction was $400. The parties stipulated that any gain on the transaction is to be taxed as ordinary income. 2. Petitioner sold 185 acres of land for $4,500. The respondent determined that petitioner's cost basis was $3,229.20 and that his gain on the sale was $1,270.80. The respondent's determination of the amount of gain on such transaction was correct. The parties stipulated that any gain on the transaction will be taxed to petitioner as a long-term capital gain. 3. Petitioner sold 80 acres of land for $3,000 for which the respondent determined petitioner's cost basis was $1,461.32, making his profit on such sale $1,538.68. The respondent's determination of the amount of gain on such transaction was correct. The parties stipulated that any gain on the transaction will be taxed to petitioner as ordinary income. 4. Petitioner *28 built and sold two houses for $3,000 each. Petitioner's cost basis for each house was $2,500 and his gain thereon was $500 each. The parties stipulated that any gain will be taxed as ordinary income. 1947 Petitioner built and sold a house for $3,000 for which he had a cost basis of $2,500. Petitioner's gain on the sale was $500. The parties stipulated that any gain is to be taxed as ordinary income. 1949 1. Petitioner built and sold two houses for $4,000 each for which he had a cost basis of $3,500 each. The profit on each of such sales was $500. The parties stipulated that any gain on the transaction will be taxable as ordinary income. 2. Petitioner built a house for one Eula McCart which he sold to her for $1,500. His cost of building the house was $1,500. He realized no gain on such transaction. 1950 Petitioner built and sold a house for $3,700 for which he had a cost basis of $3,200. His gain was $500. The parties stipulated that any gain is taxable as ordinary income. Real Estate Commission On his returns for the years in issue, petitioner reported income from "Real Estate Commissions Net" in the following amounts: 1946
$ 702
1947
702
1948
690
1949
1,260 *
1950
1,110
*29 In determining the deficiencies here in issue, the respondent included the above amounts in petitioner's gross income under the category "Commission on Real Estate." The parties now agree that the category used by petitioner on his return and the amounts shown above included income from the sale of real estate owned by him, and income from appraisals and rentals as well as true brokerage income earned by him as a real estate sales agent. Petitioner received brokerage commissions of $50 per year during each of the years in issue. Interest Income Petitioner's books and records, as disclosed to the revenue agents, were wholly inadequate to determine the correct amount of gross interest income, bad debts, and recoveries thereon, which petitioner realized during the years in issue. Petitioner employed two people who assisted in making loans and keeping his books. When a loan was made, the bookkeepers entered on a 5 X 8 inch card the borrower's name, the amount of the loan, and the total amount of interest to be received. When collections were received, they were noted on such cards and in a cash book. The revenue agents, *30 in the course of their investigation, discovered that many loan cards were missing from petitioner's files. The State of Alabama required persons in the loan business, such as petitioner, to report to the State Bureau of Loans each year the composite total amount of collections of loan principal and interest which they received during the year. Petitioner's reports to the State Bureau of Loans of such collections show that the amounts thereof were far in excess of the collections indicated on the cards available to the revenue agents. The agents computed the average interest earned on collections as shown on the cards which petitioner had available and applied such average rate of interest to the total collections reported to the State Bureau of Loans, thus arriving at an amount which they determined was petitioner's gross interest income during each of the years in issue. The parties stipulated the amounts which petitioner recovered each year on bad debts which had been previously written off, and also stipulated the amounts of bad debts which he was entitled to deduct from gross interest income each year. Petitioner received net interest income during the years in issue as follows: *31 1946
$ 8,678.37
1947
14,710.46
1948
17,590.27
1949
13,884.94
1950
22,188.03
On the basis of the facts stipulated by the parties and the additional findings made herein, petitioner's adjusted gross income during the years in issue and the percentage amount by which he understated his income are as follows: Percentage
Adjusted
of Under-
Gross Income
statement
1946
$19,583.13
391
1947
17,593.27
467
1948
14,180.95
227
1949
13,507.72
185
1950
24,731.67
443
A part of the deficiencies for each of the years in issue was due to fraud with intent to evade tax. The returns for each year were false and fraudulent with intent to evade tax. Opinion RICE, Judge: The issues before us are entirely questions of fact. As indicated in our findings, agreement was reached by the parties at the hearing with respect to most of the adjustments which the respondent made in his determination of the deficiencies. The remaining items on which agreement was not reached were the amount of income from ten real estate sales, the amount of commissions on real estate sales, the correct amount of net interest income which the petitioner *32 received during the years in issue, and, finally, whether part of the deficiencies were due to fraud with intent to evade taxes. Real Estate Sales Insofar as the sale of the seven houses is concerned, petitioner had no records whatsoever as to the cost of either the building materials or labor which he used in the construction of such houses. He called a builder and a carpenter and the president of a local bank who gave testimony with respect to some of the houses. He, himself, testified with respect to the cost of all of them. On the basis of the meager evidence at hand and doing the best we can under the Cohan [1] rule, we have determined petitioner's basis in those houses for purposes of determining the amount of gain which he realized on the sale of such properties. As indicated by our findings, we think the respondent was clearly in error in allocating the cost of removing the five houses from the two lots sold in 1946 to the houses rather than to the two lots from which they were removed, pursuant to the terms of sale. The parties are in agreement as to petitioner's original cost basis of the *33 property ( $500) and as to the selling price ( $900) and cost of removing the houses ($4,000). The only evidence submitted with reference to this transaction was petitioner's testimony and that of the contractor who removed the houses. It seems clear, however, that his cost basis for purposes of determining gain on the transaction was either $4,500, or that the $4,000 which he paid to have the houses removed was received by him from the purchaser merely as a conduit because he almost immediately paid over that amount to the contractor. His gain on the transaction was therefore $400, taxable as ordinary income. Petitioner had no records with reference to his cost basis in the 185 acres of land or the 80 acre parcel which he sold in 1946. We think that even at the time of the hearing it would have been possible for him to have substantiated his testimony to some extent. Since he did not offer any evidence other than his own testimony, we have upheld the respondent's determination of the amount of gain realized on those two transactions. Real Estate Commission In determining the deficiencies herein, the respondent included in petitioner's gross income under the category "Commission *34 on Real Estate" the following amounts: 1946
$ 702
1947
702
1948
690
1949
1,260
1950
1,110 The petitioner reported the same amounts on his returns under the category "Real Estate Commissions Net." The parties now agree that such category, as used by petitioner, included income from the sale of real estate owned by him, and income from appraisals and rentals, as well as true brokerage commissions earned as a real estate sales agent. Since the respondent's determination of the amounts of actual brokerage commissions which the petitioner received each year was based on nothing more than the amounts so capitioned and reported by petitioner on his returns, and since the amounts so reported included income from sources other than true brokerage income, it is obvious that the respondent's determination is excessive. The petitioner admitted the receipt of small brokerage commissions. However, he offered no evidence to support his assertion; and, doing the best we could on this inadequate record, we found that he received brokerage commissions in the amount of $50 each year during the years in issue. Interest Income Prior to the hearing, petitioner employed *35 a certified public accountant to compute the amount of net interest income which he had received from his loan business during the years in issue. The accountant had no more records to work with than did the respondent's agents. His determination of the amount of gross interest income which petitioner received was less than that determined by the respondent. We are not, however, persuaded that his determination was right and the respondent's wrong. It was incumbent on the petitioner to keep accurate records from which the amount of his interest income could be correctly computed, which, manifestly, he failed to do. The respondent originally determined that petitioner's net interest income was greater than he now concedes it to be in view of the stipulations with respect to the allowances for bad debts and recoveries thereon. We have carefully considered the computations of the petitioner's account which were submitted into evidence as well as the accountant's testimony. On the basis of all the evidence before us, however, we conclude that the amount of gross interest income determined by the respondent was correct, [2] and that petitioner received net interest income in the amounts *36 set forth in our findings of fact. Fraud On the whole record before us, we are satisfied that the respondent has demonstrated by clear and convincing evidence that a part of the deficiencies here in issue for each of the years was due to petitioner's fraudulent intent to evade taxes and that each return was false and fraudulent with intent to evade tax. As evidenced by the amounts of income which petitioner earned, he was a man of considerable business acumen and one of more than average intelligence. He offered no plausible explanation which would tend to excuse his failure to report the large sums of income which he, in fact, received. The amounts by which he understated his income are too large and such understatements occurred consistently over too long a period of time for us to believe that they were due to anything other than a deliberately fraudulent intent to evade taxes. ; , affd. - Fed. (2d) - (C.A. 5, November 9, 1955); *37 ; and (C.A. 6, 1940). In addition to petitioner's consistently large understatement of income, we believe that his method of reporting income was a deliberate attempt to conceal the true amount thereof. His returns each year showed on page 1 only net amounts of income from some three to six sources. He conceded that he received income during the years in issue from nine to eleven different sources. In 1947, 1948, 1949, and 1950, he received sizeable amounts of income from a building supply business. That source of income or the amounts thereof were never shown on his returns. On his returns for 1946 and 1947, he reported net real estate commissions of $702 for each year (in which category he included income from real estate sales); and on his returns for 1948, 1949, and 1950, he reported interest income of $1,777 for each of those years. Petitioner now concedes he received sums far in excess of the amounts which he reported from both of those sources during the years indicated. That fact, together with his reporting identical amounts of income from those sources for two or three *38 years, and his failure to report sizeable amounts of income from other sources indicate a willful disregard of his duty to report the true amount of his income. We are convinced on the record here that such disregard was due to a deliberately fraudulent intent on his part. In addition to the testimony of both of petitioner's bookkeepers during the years in issue, an affidavit from each was submitted into evidence. In such affidavits, they stated that petitioner and members of his family frequently withdrew sums of cash from the cash drawer for their personal use; that a notation of the amount withdrawn was left in the cash drawer; that such notations were used at the end of the day by the bookkeepers in checking the cash and were then given to the petitioner; and that no permanent records were made of the amounts withdrawn. One of the bookkeepers further stated that amounts of cash were withdrawn by petitioner in 1949 and 1950 for the purpose of meeting a portion of the payroll for labor employed in the construction of his personal residence. Such method of withdrawing cash sums from his business, coupled with the fact that his returns disclosed only net amounts of income, indicate *39 that petitioner filed his returns with the calculated purpose of hiding the cash withdrawals which he and members of his family made from his business. Having found that each return was false and fraudulent with intent to evade taxes, the issue with respect to the understatement of more than 25 per cent of gross income in 1948 and 1949 becomes moot; and the statute of limitation is not a bar to the assessment and collection of the deficiencies for any of the years in issue. Decision will be entered under Rule 50. Footnotes
*. Includes $560 of "Other Fees and Commissions."↩
1. (C.A. 2, 1930).↩
2. A mathematical error in respondent's computation of gross interest income for 1947 was noted by him on brief and has been taken into account in our findings.↩